DONALD J. CAMERON v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

January 8, 1896.

Nos. 9719—(205).

### Action against Railroad Company to Recover Land—Attorney's Fees —G. S. 1894, §§ 2660, 2661—Constitutionality.

The provisions of G. S. 1894, §§ 2660, 2661, allowing the plaintiff reasonable attorney's fees in actions brought under the statute to recover possession of land taken, without compensation, by a railroad company for its right of way, are constitutional.

Appeal by defendant from an order of the district court for Fillmore county, Whytock, J., fixing the amount of plaintiff's attorney's fees at $250, and also from that part of the judgment entered in favor of plaintiff which adjudged that plaintiff recover said sum as attorney's fees. Affirmed.

*Wells & Hopp* and *H. H. Field,* for appellant.

*Gray & Thompson,* for respondent.

START, C. J. This is an action under the provisions of Laws 1875, c. 98 (G. S. 1894, §§ 2657–2662), in the nature of ejectment, where compensation for the taking of land for a right of way and other railway purposes has not been made.

The complaint alleged ownership and right of possession in the plaintiff in and to the demanded premises; that the defendant was in

[1] Reported in 65 N. W. 652.

the possession thereof, using the same for railway purposes, and had refused to deliver possession to the plaintiff, or to compensate him for the same, although repeatedly requested so to do. The defendant, by its answer, denied the plaintiff's title, and alleged that it was the owner, by grant and adverse possession of the premises, and had been in possession thereof, and using the same, for more than 15 years before the commencement of the action, for right of way and other railway purposes. The defendant did not exercise the option, given by the statute, to have the compensation due to the plaintiff, for the taking and perpetual use of the premises for railroad purposes, assessed in case he established his right to the premises, but rested its defense upon its claim of title thereto. The trial court found that the plaintiff was the owner of the premises; that the defendant's grantor entered upon the premises under license and permission from the plaintiff, and continued to use them for its right of way and for railway purposes, without compensation to the plaintiff or acquiring his interest therein, until January 1, 1880, when they were conveyed to the defendant; that the defendant then went into possession of the premises, and so continued to use them until the year 1884, when the plaintiff revoked the license, and demanded that the defendant purchase his interest therein, or surrender the possession thereof, which it refused to do, and has ever since wrongfully excluded the plaintiff therefrom. As a conclusion of law, the court directed judgment for the plaintiff for the possession of the premises and for the mesne profits. The defendant appealed from an order denying its motion for a new trial to this court, and the order was affirmed, and the cause remanded to the district court. Cameron v. Chicago, M. & St. P. R. Co., 60 Minn. 100, 61 N. W. 814.

Thereafter the plaintiff moved the district court to determine the amount of attorney's fees the plaintiff was entitled to recover. This motion was opposed by the defendant, but upon what ground the record does not disclose, and, by agreement of the parties, the hearing of the motion was continued, with leave for both parties to make and file affidavits. Afterwards the court made its order, upon such affidavits and the records and files of the court in this case, fixing the attorney's fees to be paid by the defendant in the sum of $250, and thereupon judgment was entered for the plaintiff, that he recover from the defendant the possession of the premises, the mesne

profits, his attorney's fees, and his costs and disbursements. The defendant appealed to this court from the judgment.

Neither the evidence nor the affidavits upon which the order of the court was based are a part of the record on this appeal; and it must be assumed that Laws 1875, c. 98 (G. S. 1894, §§ 2657–2662), applies to this case, and that it is a proper case for the allowance of attorney's fees, and that they were properly allowed by the trial court, provided the statute is constitutional. This is conceded by the defendant, but it is contended on its behalf that section 5 of the statute (G. S. 1894, § 2661) is unconstitutional, for the reason that it is class legislation; that it violates article 1, § 8, of the state constitution, which provides that every person is entitled to obtain justice freely, without purchase, conformably to the laws; and that it deprives railway corporations of their property without due process of law, contrary to the provisions of article 1, §§ 2, 7, of the state constitution, and the fourteenth amendment to the constitution of the United States. Is this statute here in question constitutional in so far as it allows the plaintiff to recover reasonable attorney's fees in an action under the statute, when the defendant does not exercise the privilege given by the statute to practically convert the action into condemnation proceedings? This is the only question presented by the record for our decision, and we answer it in the affirmative.

The provisions of the statute (G. S. 1894, §§ 2657–2662) are as follows:

"Sec. 2657. One year after any railroad has been constructed across the land of any person in this state, if such person has not already obtained compensation for the taking of his land for railroad purposes, and in all cases where any person is entitled to such compensation for such land, whether the same was taken with the acquiescence of the owner thereof or not, and no proceedings under the law have been instituted or are pending, to ascertain and assess such compensation, then and in that case he may have and maintain an action to recover the land so taken for railroad purposes, with or without damages for withholding thereof, and the rents and profits of the same, against the corporation or person constructing or operating such railroad.

"Sec. 2658. In such action the defendant may, by answer, admit and allege the taking of the plaintiff's land for railroad purposes, that no compensation has been made for such taking, and that the defendant is ready and willing to pay such compensation on having

the same assessed and ascertained by the jury trying the action, provided, the plaintiff on the trial shall establish his right to recover the land in question.

"Sec. 2659. In such action, when the defendant by answer admits and pleads as in the last section specified, the jury shall try, and by their verdict find, whether the plaintiff is entitled to recover the land in controversy, and if so entitled, then the amount of compensation to which the plaintiff is entitled for the taking and perpetual use of this land for railroad purposes: provided, that when it appears that the land was so taken or appropriated by and with the consent and acquiescence of the owner, such owner shall not be entitled to recover any rents or profits which accrued prior to demand for compensation for such land, and he shall be limited to a recovery, in such case, to compensation for the land taken, and damages.

"Sec. 2660. Upon a verdict finding that the plaintiff is entitled to recover the land in suit, and the compensation due him for the taking and perpetual use of such land for railroad purposes, judgment shall be entered in substance as follows: That the plaintiff have and recover from the defendant the land in suit, or, in lieu thereof, the compensation fixed by the jury, with costs and disbursement, and reasonable attorney's fee, to be fixed by the court. On the expiration of thirty days after the entry of the judgment aforesaid, if the compensation, costs, disbursements and attorney's fee specified in the judgment are not paid, then a writ of execution shall issue for the delivery of the possession of the land described in the judgment to the plaintiff, and to satisfy the judgment as to costs, disbursements and attorney's fee out of any property of the defendant.

"Sec. 2661. In case the defendant does not plead as in the second section specified, then, if there is no answer, or if the plaintiff upon the trial establishes his title to the land sued for, he, the plaintiff, shall have judgment for the immediate possession of the land, and for such damages, rents and profits, as may be alleged and found, with costs, disbursements and reasonable attorney's fee, to be fixed by the court; and, upon such judgment, execution shall issue in the like manner, and for and with the like effect, as is provided in subdivision four of section two hundred and sixty-four of chapter thirty-[sixty-]six of the General Statutes.

"Sec. 2662. The action given by this act shall in all other respects, except as herein provided, be governed by the same rules of practice and procedure, as to new trials and appeals, or otherwise, as other actions brought for the recovery of real estate under the laws of this state."

This statute has been in force for nearly 20 years, and attorney's fees have been repeatedly allowed to the plaintiff in actions brought under it. Two such cases have been heard on appeal in this court (see Coleman v. St. Paul, M. & M. R. Co., 38 Minn. 260, 36 N. W.

638; Scott v. Minneapolis, St. P. & S. Ste. M. R. Co., 42 Minn. 179, 43 N. W. 966); and, so far as we are advised, this is the first time any question as to the constitutionality of the provisions of this statute allowing reasonable attorney's fees has ever been suggested. This acquiescence, without question, of bench and bar, in the validity of the statute, is significant; and it is entitled to controlling weight if the question as to the validity of the statute is doubtful.

The reasons given by counsel for the defendant why the statute, in so far as it provides for the allowance of reasonable attorney's fees to the plaintiff in cases where the railway company does not elect to convert the action into condemnation proceedings, are all substantially included in his general proposition that it is arbitrary and unequal class legislation. If such it is, there is nothing to discuss; for then the conclusion necessarily follows that the statute is unconstitutional.

Class legislation, discriminating against some and favoring others, is prohibited, but legislation is not prohibited either by the state or federal constitution, which, in carrying out a public purpose, is limited in its application, if, within the sphere of its operation, it affects alike all persons similarly situated. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357. The legislature, however, cannot adopt a mere arbitrary classification, even though the law be made to operate equally upon each subject of each of the classes adopted. The classification, to be valid, must be based upon some reason of public policy, growing out of the condition or business of the class to which the legislation is limited. But a law which is confined in its application to a particular class of persons is not void as unequal class legislation if the distinction is based on some reason of public policy, and applies to and embraces all persons alike under similar circumstances. Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; Allen v. Pioneer Press Co., 40 Minn. 117, 41 N. W. 936; Lavallee v. St. Paul, M. & M. R. Co., 40 Minn. 249, 41 N. W. 974. This right to classify persons, corporations, and associations, and to impose upon them, as a class, duties and liabilities, or to confer upon them privileges, not imposed or conferred upon the whole people of the state, is a matter committed to the sound discretion of the legislature, subject to the supreme condition that the classification must not be arbitrary, but must be based upon some natural reason of public

policy.    Upon the exercise of this right rests much of the necessary and beneficient legislation of the state.    The exercise of this right is not limited to matters connected with the police power of the state, but it may be exercised in all cases where public interests and the due administration of justice require it.    Thus, in the case of Allen v. Pioneer Press Co., it was held, in view of the general nature of the business of the publisher of a newspaper, and the interests of the public therein, that Laws 1887, c. 191 (see G. S. 1894, §§ 5417,. 5418), regulating actions for libel, was not arbitrary or unequal class legislation, although it made special provisions for the protection of the publishers of newspapers when sued for a libel which were· not conferred upon other defendants in libel suits, for the reason that the distinction was based upon considerations of public policy, of· which the legislature was the judge.

It is the settled policy of this and many other states to provide by· law for an increase of damages or indemnity for the expenses of litigation by allowing double costs or reasonable attorney's fees. where an injury results to a person from the willful act or neglect of another, and such laws are held to be a legitimate exercise of legislative discretion.    Thus, a law providing for double costs or for· double damages in actions for the recovery of damages for live stock killed or injured by the neglect of railway companies to fence their· right of way is constitutional.    Johnson v. Chicago, M. & St. P. R.. Co., 29 Minn. 425, 13 N. W. 673; Schimmele v. Chicago, M. & St. P. R. Co., 34 Minn. 216, 25 N. W. 347; Missouri Pac. R. Co. v. Humes, 115 U. S. 512, 6 Sup. Ct. 110; Minneapolis & St. L. R. Co. v. Beckwith, 129 U. S. 26, 9 Sup. Ct. 207.

Tested by the rule we have stated as to class legislation, the statute in question is constitutional when applied to actions within. its provisions, although the defendant does not elect to avail itself' of the privilege of retaining the land for railway purposes, and making compensation for such taking.    Counsel erroneously assumes that an action under this statute is a simple action of ejectment, when the defendant fails to exercise its option to convert the action, by its answer, into condemnation proceedings.    While it is true that the statute creates no new remedy, yet it regulates and materially qualifies an existing one, to the detriment of the landowner, for the benefit of the railway company and the public; and,.

as compensation to the owner for his expenses in the litigation, it allows him reasonable attorney's fees, provided he brings his case within the terms of the statute. The failure of the defendant to accept the privileges conferred upon it by the statute can neither make nor mar the considerations of public policy upon which the statute is based, or deprive the plaintiff of the indemnity, for his expenses in prosecuting his action, given by the statute for the injury sustained by the willful act or neglect of the defendant.

It is to be noted that the statute does not purport to allow attorney's fees in ordinary actions of ejectment against railway companies. It is only when the landowner foregoes his right to repossess himself of his land taken for a railway purpose, for one year after the land has been taken and the railroad constructed across it, when no proceedings to acquire a right to so take and use his land are pending, and when he is entitled to compensation for taking his land, but has not received it, that he may bring an action for the recovery of the possession of his land under the statute, and obtain an allowance for his reasonable attorney's fees. If he brings an ordinary action of ejectment when none of these conditions exist, he is not entitled to any allowance for attorney's fees. But when they do exist, and the action is brought under the statute to redress the wrong done to him and to the public by the willful act of the railway company in taking forcible possession of his land for railway purposes, or (where such taking was with his temporary acquiescence) by its neglect of its duty to acquire and pay for the right to take the land, his right to reasonable attorney's fees cannot be defeated by the failure of the railway company to claim by its answer the privileges conferred upon it by the statute. Declining the benefits of the statute does not absolve the railway company from the liabilities imposed upon it for its neglect of a public and private duty.

The statute applies alike to all persons or corporations constructing or operating a railroad and to all landowners who bring an action under it, including railway corporations. It includes in its classification all persons and corporations similarly situated, and as to them it is general in its application. It is true that persons and corporations other than those engaged in building or operating railroads are authorized to exercise the power of eminent domain, and

possibly they may have taken land for a quasi public purpose without making compensation therefor; but the business of such persons and corporations is radically dissimilar in its character and extent, and in its effect upon public and private interests, from that of railway corporations. This difference constitutes a proper basis for limiting the operation of the statute to corporations and persons operating railroads.

The reason and public policy justifying the provision of this statute giving reasonable attorney's fees to the plaintiff in actions brought under it, when no such allowance is made to parties in ordinary actions for the recovery of land, are obvious. One purpose of this provision is, by the promise of indemnity for the expenses of the litigation, to induce the owner whose land has been unlawfully taken, without compensation, for the right of way of a railroad, to wait a reasonable time before bringing an action to repossess himself of it, and then to bring the action under the statute, so that, in case his right to recover the land is established, the railway company may retain it by making compensation therefor, and avoid a break in its right of way, whereby its business would be interrupted, to the injury of public and private interests. Another purpose of the statute, and perhaps the principal one, is to compel railway companies to respect the constitutional rights of the citizen, and to discharge their duties to the public and individuals. Such corporations must have land for their right of way in order to discharge the public functions for which they were created, and, to enable them to acquire such land, the state has armed them with the sovereign power of eminent domain. They are therefore charged with the duty of acquiring and paying for their right of way in the manner and at the time required by the constitution and laws of the state. When they neglect this duty, and forcibly take possession of the land of another for railway purposes, or take such possession with the temporary consent, expressed or implied, of the owner, and unreasonably neglect to make compensation therefor, their conduct menaces in a measure the public peace and the safety of the traveling public, for nothing is better calculated to arouse the evil passions of men than a wanton and unredressed invasion of their constitutional and property rights. Such willful acts or unjustifiable neglect oppresses and wrongs property owners,

and it is entirely competent for the legislature, as a means of correcting such abuses and as a matter of justice, to give to persons injured by such act or neglect increased damages or indemnity for their expenses incurred in actions to right their wrongs, by allowing them double costs or reasonable attorney's fees.

The validity of the statute in question is supported by the considerations of public policy and justice to which we have referred. It is not partial or unequal class legislation; it does not deprive the defendant of its property without due process of law; nor does it violate our bill of rights securing to every person the right to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformably to the laws.[2]   This proposition is supported by the cases to which we have referred, sustaining the validity of statutes giving double costs or double damages in actions against railway companies to recover damages for domestic animals killed or injured by their neglect.

For reasons already suggested, it is not necessary here to decide whether any limitation ought to be placed upon the application of this statute, so as to restrict its operation to cases where the failure of the owner to secure compensation for his land taken for railway purposes is due to the willful act or inexcusable neglect of the railroad corporation. We can conceive of probable cases which are not within the reason or policy of the statute; for example, cases where the railway company had in good faith, as it had reason to believe, lawfully acquired and paid for its right of way, but by reason of a forged deed, or some error of its attorney in the condemnation proceedings, it failed, through no neglect of its own, to obtain a strictly legal title to its right of way. Upon the question whether or not such cases must, on constitutional grounds, be excluded from the operation of the statute, we express no opinion, and leave it an open question, to be decided when it arises.

Judgment affirmed.


CANTY, J. I concur in the result, but am of the opinion that the statute cannot be held constitutional as applied to all the different cases which may come within its terms. The legislature has a

---

[2] Const. Minn. art. 1, § 8.

perfect right to provide for redressing a class of wrongs by imposing extra costs in the suit brought to vindicate those wrongs, providing the class selected by the legislature is different in some essential particular from all other wrongs,—if the basis of classification is a proper one.   Ejectment cases to recover land occupied as a right of way are often defended in bad faith, or without color of right, or with a negligent disregard for the truth as to the merits of the controversy.   A railroad company enjoys peculiar privileges for the protection of its franchises, and to prevent the interruption of the public service in such cases, and the legislature may well provide means to prevent the abuse of those privileges.   As applied to proper cases, the statute is clearly constitutional;  but where the defendant has color of right, is acting in apparent good faith, is not negligent in failing to ascertain the truth or merits of its defense, and is not in any manner abusing its privileges,—as applied to such cases, I am of the opinion that the statute is unconstitutional.   I am also inclined to think that, if we had before us the record brought up on the former appeal,[3] this would be such a case.   But there is nothing before us on this appeal but the complaint, findings, and judgment. Every presumption is in favor of the regularity of the proceedings of the court below, and I am therefore of the opinion that the judgment appealed from should be affirmed.